## PILLOIS v. BILLINGSLEY.

### No. 112, Docket 21485.

United States Court of Appeals
Second Circuit.

Argued Dec. 15, 1949.

Decided Jan. 16, 1950.

Holthusen & Pinkham, New York City (Spencer Pinkham, William F. Purcell, New York City, of counsel), for plaintiff-appellee.

Goldwater & Flynn, New York City (Monroe Goldwater, Milton Small, Louis R. Colman, New York City, of counsel), for defendant-appellant.

Before AUGUSTUS N. HAND, CHASE and CLARK, Circuit Judges.

CHASE, Circuit Judge:

This appeal is from a judgment in a suit brought under the diversity jurisdiction of the court to recover the reasonable value of the appellee's services, performed at the request of the appellant, in procuring a contract for a corporation of which the appellant was a director.

The complaint alleged that on or about July 9, 1947 the plaintiff and the defendant agreed as follows: that the plaintiff would go to Paris, France at the defendant's expense and that, if the plaintiff should successfully negotiate with a certain French perfume manufacturer, which made the Le

Galion line of perfumes and toilet waters, and secure from it a contract that would grant to Cigogne, Inc., a corporation in which the defendant was interested, the exclusive right to sell Le Galion perfumes on terms acceptable to the defendant and Cigogne, Inc., the defendant would pay to the plaintiff the reasonable value of his services in negotiating and securing the contract.

It further alleged that the plaintiff did negotiate and secure a contract from the French manufacturer, which was accepted by Cigogne, Inc., and which granted to it, among other things, the exclusive right to sell Le Galion perfumes in the United States for a period of 99 years. It was also alleged that demand had been made for payment of the fair value of the plaintiff's services but that no payment had been made.

In his answer, the appellant alleged that Cigogne, Inc., had before July 9, 1947 obtained by assignment a contract under which it secured the exclusive right to represent the same French manufacturer in marketing and distributing the brand of products known as Le Galion "throughout the Western Hemisphere, with the exception of three countries and one British possession"; and the plaintiff represented that he was able to obtain an extension of that contract "upon the same terms and conditions therein contained" and agreed that "he would, thereafter, set up, organize and supervise the marketing and distribution of the Le Galion products for Cigogne, Inc."; and that the defendant agreed that he would cause Cigogne, Inc., to employ the plaintiff as its general manager at a stated salary, "such employment to continue as long as the services of the plaintiff were acceptable and satisfactory to Cigogne, Inc."; and that he "further agreed that if plaintiff procured an extension of the term of the said sales contract upon the same terms and conditions therein contained, plaintiff would receive, as additional compensation, such sum as the defendant in his sole judgment should determine to be reasonable."

It was further alleged that the plaintiff was employed by Cigogne, Inc., at a salary of $1,000 a month and that such employment continued until about October 24, 1947; that the plaintiff went to Paris at the expense of Cigogne, Inc., with full authority to negotiate and execute a contract on its behalf with the French manufacturer extending the term of the existing contract and that he did so "but upon other and changed terms and conditions rendering said contract substantially less favorable to the said Cigogne, Inc., than the prior sales contract"; and that consequently the plaintiff did not perform the services he had agreed to perform and was not entitled to additional compensation for procuring the contract.

With issue thus joined, the suit was tried by court and it was found on evidence, sufficient though in part conflicting, that the defendant had employed the plaintiff to obtain "from La Societe Le Galion a long term exclusive representation of S. A. Le Galion perfumes in the United States of America and elsewhere in the Western Hemisphere in the name of Cigogne, Inc.," and that the defendant agreed to pay the plaintiff for his services in so doing such sum as the defendant in his sole judgment might decide to be reasonable. It was further found that "the plaintiff went to France and returned with a contract giving Cigogne, Inc., exclusive representation in the United States, Alaska, Puerto Rico, Hawaii, and the Philippine Islands for the Le Galion perfumes for a term of 99 years"; that Cigogne, Inc., accepted the contract and was operating under it; and that the defendant had refused to pay the plaintiff anything for his services in obtaining it and had not given any consideration to determining what would be reasonable compensation for them. It was held that under these circumstances the plaintiff could recover the reasonable value of his services, which the court determined to be $6,000. The judgment entered was for that amount with interest and costs.

The agreement for procuring the contract was part of an over-all arrangement which included the employment of the plaintiff as general manager of Cigogne, Inc., and that over-all arrangement was vague and indefinite in certain respects.

According to the plaintiff's version he was given some rights to obtain shares of stock in Cigogne, Inc., and a percentage of its profits, and of its gross sales, all left uncertain in terms and amounts. Consequently, the appellant contends that no enforceable contract was proved.

But this action is not based upon any claim that there was a breach of any agreement to employ appellee as general manager. This suit is confined to the alleged breach of the agreement relating to the procurement of the long term contract between the French manufacturer and Cigogne, Inc. That was set forth in a letter which the appellant had his own attorneys prepare and which was addressed to the appellant and signed by the appellee as follows:

"July 9, 1947
"New York City
"Mr. Sherman Billingsley,
"Stork Restaurant Inc.,
"3 East 53rd Street,
"New York, N. Y.
"Dear Sir:

"This will confirm our understanding in connection with the exclusive representation of the S. A. Le Galion trade mark under contracts of March 20, 1946 and July 25, 1946, now being held by Cigogne, Inc., a New York corporation by assignment from Chapman & Keane, as follows:

"You will provide funds for expenses for my trip to France forthwith for the purpose of my obtaining from La Societe Le Galion a long term exclusive representation of S. A. Le Galion perfumes in the United States of America and elsewhere in the western hemisphere in the name of Cigogne, Inc., with the right of Cigogne, Inc. to appoint national or area distributors in its discretion.

"My compensation for such services as I may render in this connection shall be such sum as you, in your sole judgment, may decide is reasonable.

"You have made no other commitment and have no other obligation to me of any kind whatsoever.

"Yours very truly
"Raymond Pillois (s)
"Raymond Pillois

This letter, as the trial judge held, shows an agreement which is not too indefinite to be enforced, the appellee having performed his part of it. It entitled him to have the appellant in good faith determine the reasonable value of his services and to pay him that amount. Cf. Ake v. Chancey, 5 Cir., 149 F.2d 310. See 1 Williston on Contracts, § 43. And when the appellant failed to make any determination whatever as to what such services were reasonably worth the appellee became entitled to recover as on a quantum meruit basis. Von Reitzenstein v. Tomlinson, 249 N.Y. 60, 162 N.E. 584; Varney v. Ditmars, 217 N.Y. 223, 111 N.E. 822, 823, 825, Ann. Cas.1916B, 758; Canet v. Smith, 173 App. Div. 241, 159 N.Y.S. 593 (1st Dep't).

We are here dealing with the legal results which flow from the performance by one party to a contract and not with what legal obligations, if any, are created by a wholly executory contract. See 1 Williston on Contracts § 49. It may be acknowledged that the appellant was not satisfied with the terms of the contract procured from the French manufacturer because, among other things, the territory embraced in the former contract was diminished, but the fact remains that Cigogne, Inc., did accept it, as both its answer admits and the evidence clearly shows.

While it is true that many difficulties are encountered in fixing the reasonable worth of the appellee's services in procuring the contract, that did not deprive him of the right to compensation. As was observed in respect to an award of damages in Straus v. Victor Talking Mach. Co., 2 Cir., 297 F. 791, 802, "Difficulty of ascertainment is no longer confused with right of recovery." See also Story Parchment Co. v. Paterson Co., 282 U.S. 555, 562–566, 51 S.Ct. 248, 75 L.Ed. 544; Sheldon v. Metro-Goldwyn Pictures Corporation, 2 Cir., 106 F.2d 45, 51, affirmed, 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825. In this instance the evidence showed that the appellee made a return trip from New York to Paris; that he negotiated for twelve days with the French manufacturer; that it was unusual in this business to enter into such a contract for a term as long as

99 years; and that the appellant was experienced in the perfume business and well and favorably known to M. Vacher who had charge of the negotiations in Paris for the French manufacturer. The appellee testified that his services were worth $100,-000 but the trial judge, who has had many years of experience on the bench, evidently considered that greatly exaggerated. There was other evidence that the contract itself was worth from $25,000 to $50,000 to Cigogne, Inc., and that of course was a relevant matter for consideration in determining the value of appellee's services. The weight to be given all this evidence was to be decided by the trial judge. We are concerned only with whether there was substantial support for his determination that $6,000 was the reasonable value, and we think there was.

Judgment affirmed.